# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

TERRY GLENN LOFTIN,

    Petitioner,

v.                                  Case No. 8:15-cv-2000-KKM-TGW

SECRETARY, DEPARTMENT
OF CORRECTIONS,

    Respondent.

_____

## ORDER

Terry Glenn Loftin, a Florida prisoner, timely[1] filed a pro se Amended Petition for

Writ of Habeas Corpus under 28 U.S.C. § 2254 challenging his state court convictions

---

[1] A state prisoner has one year from the date his judgment becomes final to file a § 2254 petition. *See* § 2244(d)(1). This one-year limitations period is tolled during the pendency of a properly filed state motion seeking collateral relief. *See* § 2244(d)(2). The state appellate court affirmed Loftin's convictions and sentences on August 14, 2009. Therefore, the judgment became final on November 12, 2009, when the 90-day period to file a petition for writ of certiorari in the Supreme Court of the United States expired. *See Bond v. Moore*, 309 F.3d 770, 774 (11th Cir. 2002). Twenty-seven days later, on December 10, 2009, Loftin filed a motion for postconviction relief in state court. That motion remained pending until the state appellate court's mandate was issued on December 3, 2014. The Court takes judicial notice of online state court dockets showing that prior to that date, Loftin filed a motion to correct an illegal sentence under Florida Rule of Criminal Procedure 3.800(a) on November 26, 2014. Loftin had already filed his § 2254 petition on August 24, 2015, before the state appellate court's mandate issued in the Rule 3.800(a) proceedings on September 28, 2015. Thus, his original § 2254 petition was timely. The one-year limitations period continued to run, as the filing of Loftin's original § 2254 petition did not toll the period. *Duncan v. Walker*, 533 U.S. 167, 181-82 (2001). After another 83 days of untolled time, Loftin filed his amended § 2254 petition on December 21, 2015. Therefore, the new claims raised in Loftin's amended petition that

based on the alleged errors of the trial court, the State and his trial counsel. (Doc. 14.) Having considered the amended petition (*id.*), the response in opposition (Doc. 16), Loftin's pro se reply (Doc. 20), Loftin's counseled supplemental reply (Doc. 29),[2] and the response to the supplemental reply (Doc. 30), the Court denies the petition. Furthermore, a certificate of appealability is not warranted.

## I. <u>BACKGROUND</u>

The State of Florida charged Loftin with three counts of sexual battery (counts one, two, and three), three counts of lewd or lascivious battery (counts four, five, and six), one count of false imprisonment (count seven), one count of battery (count eight), and two counts of contributing to the delinquency or dependency of a child (counts nine and ten). (Doc. 8, Ex. 1.) A state court jury found Loftin guilty as charged on counts one through six and count eight, guilty of the lesser included offense of battery on count seven, and not guilty of counts nine and ten. (Doc. 8, Ex. 5.)

The state trial court dismissed count eight at sentencing upon the State's request to "merge and dismiss Count 8 into Count 7." (Doc. 8, Ex. 6, p. 196.) The court sentenced Loftin to terms of 15 years in prison for counts one through six. (Doc. 8, Ex. 6, pp. 195-

---

do not relate back to the original petition are also timely because they were filed after less than one year of untolled time elapsed.

[2] Loftin retained counsel after briefing was complete. (Doc. 25.) The Court permitted counsel to file a supplemental reply. (Doc. 26.)

96 & Ex. 7.) The sentences for counts one, two, and three were consecutive to each other; the sentences for counts four, five, and six were concurrent with the sentence for count one. (*Id.*) For count seven, Loftin was sentenced to 364 days' incarceration concurrent with the sentence for count one. (*Id.*) Thus, Loftin received a total term of 45 years in prison. The state appellate court per curiam affirmed the convictions and sentences. (Doc. 8, Ex. 10.)

Loftin filed a motion for postconviction relief under Florida Rule of Criminal Procedure 3.850, as well as a supplement and an amended motion. (Doc. 8, Exs. 11, 12, 14 & 15.) The state postconviction court denied some claims and conducted an evidentiary hearing on the remaining claims. (Doc. 8, Exs. 13, 16, 19, & 20.) The court then entered a final order denying relief. (Doc. 8, Ex. 21.) The state appellate court per curiam affirmed. (Doc. 8, Ex. 25.)

## II. STANDARD OF REVIEW UNDER SECTION 2254

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs this proceeding. *Carroll v. Sec'y, DOC*, 574 F.3d 1354, 1364 (11th Cir. 2009). Habeas relief under the AEDPA can be granted only if a petitioner is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Section 2254(d) provides that federal habeas relief cannot be granted on a claim adjudicated on the merits in state court unless the state court's adjudication:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

For purposes of § 2254(d)(1), a decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). The phrase "clearly established Federal law" encompasses the holdings only of the Supreme Court of the United States "as of the time of the relevant state-court decision." *Id.* at 412. A decision involves an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*

For purposes of § 2254(d)(2), a state court's findings of fact are presumed correct. *See Rolling v. Crosby*, 438 F.3d 1296, 1301 (11th Cir. 2006) ("The factual findings of the state court, including the credibility findings, are presumed to be correct . . . ."). A

petitioner can rebut the presumption of correctness afforded to a state court's factual findings only by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

The AEDPA was meant "to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). Accordingly, "[t]he focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, and . . . an unreasonable application is different from an incorrect one." *Id.* at 694. As a result, to obtain relief under the AEDPA, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011); *see also Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (stating that "[t]he state court's application of clearly established federal law must be objectively unreasonable" for a federal habeas petitioner to prevail and that the state court's "clear error" is insufficient).

When the last state court to decide a federal claim explains its decision in a reasoned opinion, a federal habeas court reviews the specific reasons as stated in the opinion and defers to those reasons if they are reasonable. *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018). When the relevant state-court decision is not accompanied with reasons for the decision—such as a summary affirmance without discussion—the federal court "should

'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale [and] presume that the unexplained decision adopted the same reasoning." *Id.* The state may contest "the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision . . . ." *Id.*

In addition to satisfying the deferential standard of federal court review of a state court adjudication, a federal habeas petitioner must exhaust his claims by raising them in state court before presenting them in a federal petition. *See* 28 U.S.C. § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999) ("[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."). A petitioner satisfies this exhaustion requirement if he fairly presents the claim in each appropriate state court and alerts that court to the federal nature of the claim. *Ward v. Hall*, 592 F.3d 1144, 1156 (11th Cir. 2010).

The doctrine of procedural default provides that "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001). A petitioner shows cause for a procedural default when he demonstrates "that some objective factor external to the defense impeded the effort to raise the claim properly

6

in the state court." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999). A petitioner

demonstrates prejudice by showing that "there is at least a reasonable probability that the

result of the proceeding would have been different" absent the constitutional violation.

*Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2003). "A 'fundamental miscarriage

of justice' occurs in an extraordinary case, where a constitutional violation has resulted in

the conviction of someone who is actually innocent." *Id.*

## III. <u>INEFFECTIVE ASSISTANCE OF COUNSEL</u>

Loftin brings several claims for ineffective assistance of trial counsel under the Sixth

Amendment. Under the well-known, two-part standard articulated in *Strickland v.*

*Washington*, 466 U.S. 668 (1984), to succeed, he must show both deficient performance

by his counsel and prejudice resulting from those errors. *Id.* at 687.

The first part "requires showing that counsel made errors so serious that counsel was

not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.*

The lynchpin of this analysis is whether counsel's conduct "was reasonable considering all

the circumstances." *Id.* at 688. A petitioner establishes deficient performance if "the

identified acts or omissions [of counsel] were outside the wide range of professionally

competent assistance." *Id.* at 690. A court "must judge the reasonableness of counsel's

challenged conduct on the facts of the particular case, viewed as of the time of counsel's

conduct." *Id.* "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.*

The second part requires showing that the deficient performance prejudiced the defense. *Id.* at 687. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. To demonstrate prejudice, a petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

"The question [on federal habeas review of an ineffective assistance claim] 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.' " *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). Consequently, federal petitioners rarely prevail on claims of ineffective assistance of counsel because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." *Richter*, 562 U.S. at 105 (quotation and citations omitted).

## IV. <u>ANALYSIS</u>

### A. Ground One

Loftin contends that the trial court erred in denying his motion to suppress his statements to police. Loftin argues that his statements were obtained "in violation of his right to remain silent under the Fifth Amendment" because none of the police warnings informed him that he had the right to consult an attorney during questioning as required under *Miranda v. Arizona*, 384 U.S. 436 (1966). (Doc. 14, p. 5.) Loftin asserts that the warnings informed him only that he had the right to consult with an attorney *prior* to questioning. Loftin further argues that police provided him with inadequate "consent to be interviewed form" and "written statement forms" because they require "two attesting witnesses['] signature[s] on these out of court documents in accordance with Florida Rules of Criminal Procedure 3.111(d)(4), but only have one officer[']s signature." (*Id.*, p. 6.)

Loftin filed a pre-trial motion to suppress his oral and written statements to police on the basis that the *Miranda* warnings did not adequately inform him of his right have counsel present during questioning by police. (Doc. 8, Ex. 2.) The state court conducted an evidentiary hearing on Loftin's motion. Officer Margo Fergusson and Sergeant Jonathan Gamson of the Tampa Police Department testified. Their testimony established that when police arrived at Loftin's home and interviewed him about the allegations, he received four versions of *Miranda* warnings. Because police received information that

Loftin may have had loaded firearms in the home, officers first handcuffed him when he opened the door. (Doc. 8, Ex. 3, pp. 226-27.) Sergeant Gamson verbally recited *Miranda* warnings from memory. He described his usual recitation of the warnings:

> Normally I would say you have the right to remain silent. Anything you say can and will be used against you in a court of law. You have the right to the presence of an attorney. If you cannot afford an attorney, one would be appointed for you before any questioning.

> At any time during this interview, you have the right to exercise these rights and you can stop this interview at any time you want. Has anyone threatened you, promised you or coerced you in any way in order to induce you to make a statement[?] That's what I recall I usually say.

(*Id.*, pp. 228-29.) Officer Fergusson also read Loftin *Miranda* warnings from a card issued by the State Attorney's Office. She testified that this warning states:

> You are suspected of the crime of - - would have been the rape, agg. assault and false imprisonment. You have the right to remain silent. Anything you say can and will be used against you in a Court of law.

> You have the right to [sic] presence of an attorney. If you cannot afford an attorney, one will be appointed for you without charge and before any questioning if that is your desire. Should you make a statement, you may exercise any of these rights during interrogation.

> Do you understand these rights[?] Has anyone at any time threatened, coerced or promised you anything in order to induce you to make a statement

now[?] Do you want to answer our questions or make a statement without an attorney being present[?]

(*Id.*, pp. 206-07.)

In addition, Loftin was presented with a "consent and release" form bearing his signature that he consented to the interview and to a search of his property. Officer Fergusson testified that Loftin read the form. (*Id.*, p. 208.) The warning on that form states:

> You have the right to remain silent. If you give up the right to remain silent, anything you say can be used against you in court. You have the right to talk to a lawyer before answering any of our questions. If you cannot afford to hire a lawyer, one will be appointed for you without cost and before any questioning. You have the right to use any of these rights at any time you want during this interview.

(Doc. 8, Ex. 8, App. Ex. 1.)

Finally, the form Loftin used to make his written statement contained a warning on the top of each page:

> I have been advised that I have the constitutional right to remain absolutely silent, that I need not make any statement that may tend to incriminate me, and if I do, that it may be used in a Court of Law against me. I have been advised that I have the right to counsel of a lawyer. I have also been told that if I cannot afford a lawyer, then one will be appointed without cost to

represent me. No force has been used nor promises made in obtaining this statement.

(*Id.*, App. Ex. 2.)

After these warnings and his signatures to the forms, Loftin made incriminating statements, admitting to engaging in sexual conduct with the victim, his great-niece. (Doc. 8, Ex. 3, pp. 213-14.) He also wrote a three-page confession. (Doc. 8, Ex. 8, App. Ex. 2.) At the conclusion of the suppression hearing, the state trial court denied Loftin's motion. The court stated, "Based upon the testimony of the witnesses, the Court's going to find that the Miranda warnings as given by the Tampa police officers were adequate. The defendant was sufficiently advised of his rights and the motion to suppress will be denied." (Doc. 8, Ex. 3, p. 236.)

Loftin claims that his statements should have been suppressed because the *Miranda* warnings failed to adequately inform him of his right to an attorney *during* questioning. *Miranda* holds that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." 384 U.S. at 444. Before questioning, police must inform a suspect that he has the right to remain silent, any statement can be used as evidence against him, and he has the right to have a retained or appointed attorney present. *Id.* at 444-45. Specifically, a suspect must

be informed that he has "the right to consult with a lawyer and to have the lawyer with him during interrogation[.]" *Id.* at 471.

*Miranda* does not require any kind of special incantation by police officers when providing these warnings. *See Duckworth v. Eagan*, 492 U.S. 195, 202, 203 (1989) (explaining that the Supreme Court has "never insisted that *Miranda* warnings be given in the exact form described in that decision" and that "[r]eviewing courts therefore need not examine *Miranda* warnings as if construing a will or defining the terms of an easement"); *California v. Prysock*, 453 U.S. 355, 359 (1981) ("This Court has never indicated that the 'rigidity' of *Miranda* extends to the precise formulation of the warnings given to a criminal defendant."). Therefore, the question in reviewing the adequacy of warnings given by police is "simply whether the warnings reasonably 'conve[y] to [a suspect] his rights as required by *Miranda*.'" *Duckworth*, 492 U.S. at 203 (quoting *Prysock*, 453 U.S. at 361).

Loftin fails to show that the state court unreasonably concluded that the warnings were adequate to sufficiently advise him of his rights. No set of warnings police gave to Loftin limited the right to an attorney to the period before questioning began. *See Prysock*, 453 U.S. at 360-61 (finding *Miranda* warnings adequate and stating that "nothing in the warnings given [to the suspect] suggested any limitation on the right to the presence of appointed counsel different from the clearly conveyed rights to a lawyer in general"). Moreover, the warnings repeatedly informed Loftin that he had a right to an attorney and

that he could exercise his rights at any time, including during the interview. Thus, the warnings reasonably conveyed to Loftin his rights as required by *Miranda* and it was not unreasonable for the state court to conclude the same.

The parties' briefs address *Florida v. Powell*, 559 U.S. 50 (2010). The response relies on *Powell* because it validated the Tampa Police Department's warning contained in the consent and release form in this case. *Id.* at 53-54. Loftin argues, however, that *Powell* is not clearly established federal law for purposes of reviewing his claim because it was not issued until after his conviction became final. *See Williams*, 529 U.S. at 412 (stating that clearly established federal law means holdings of the Supreme Court of the United States "as of the time of the relevant state-court decision"). Loftin is correct that *Powell* cannot serve as the clearly established federal law by which to judge the state court's ruling.

Loftin, however, admits in his counseled supplemental reply that the Supreme Court had not yet decided whether the Tampa Police Department's standard warnings passed *Miranda* muster prior to its decision in *Powell* in 2010. (Doc. 29, p. 3.) Indeed, he cites no clearly established federal law as of the time of the state court decision holding that the warnings given in his case were constitutionally inadequate. In the absence of clearly established federal law that would have required exclusion of his statements, Loftin cannot meet his burden under the AEDPA. *See Washington v. Crosby*, 324 F.3d 1263, 1265 (11th Cir. 2003) ("[W]here no Supreme Court precedent is on point, 'we cannot say that

14

the state court's conclusion . . . is contrary to clearly established Federal law as determined by the U.S. Supreme Court.' " (quoting *McIntyre v. Williams*, 216 F.3d 1254, 1258 (11th Cir. 2000))). The Court must thus assess whether, under the Supreme Court's precedent at that time, Loftin's warnings sufficed.

Loftin relies on *Colorado v. Connelly*, 479 U.S. 157 (1986) in his counseled supplemental reply for the proposition that "[t]he crucial test is whether the words in the context used, considering the age, background and intelligence of the individual being interrogated, impart a clear understandable warning of all of his rights." (Doc. 29, p. 3.) Loftin claims that he did not understand "what he was waiving" or that he had the right to counsel during questioning because he "was a high school graduate, in his mid-fifties and had been employed by the railroad his whole life" and had never been in legal trouble. (*Id.*, pp. 3-4.)

Loftin has misapprehended *Connelly*. In addressing whether a *Miranda* waiver was involuntary due to the suspect's mental health concerns, the Supreme Court concluded that "the Supreme Court of Colorado erred in importing into this area of constitutional law notions of 'free will' that have no place there." *Connelly*, 479 U.S. at 169. The Court explained that "the voluntariness of a waiver of this privilege has always depended on the absence of police overreaching, not on 'free choice' in any broader sense of the word." *Id.* at 170. *Connelly* does not support Loftin's position that the warnings in his case were

15

constitutionally inadequate. Loftin's conclusory and self-serving assertion that the wording of the *Miranda* claims did not clearly convey the right to counsel to him personally based on his background, which he raises for the first time in his reply, is insufficient to show that the state court's ruling was unreasonable.

Finally, Loftin contends that the consent to be interviewed form and the written statement form were inadequate because they were missing one of the two required signatures, in violation of Florida Rule of Criminal Procedure 3.111(d)(4). But whether the form complied with a state rule of procedure is a state law issue that raises no question of federal dimension. Because this aspect of Loftin's claim does not allege a federal constitutional violation, it is not cognizable on federal habeas review. *See Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988) ("[A] habeas petition grounded on issues of state law provides no basis for habeas relief."). Accordingly, Ground One warrants no relief.

### B. Ground Two

Loftin claims that the State violated *Brady v. Maryland*, 373 U.S. 83 (1963), by failing to disclose "psychological and [sic] treatment of the victim that would have shed light on the victim's motive for bringing the charges." (Doc. 14, p. 8.)

Loftin raised this claim in his state postconviction motion. As addressed during the postconviction evidentiary hearing testimony of Loftin's trial counsel and the lead trial prosecutor, the Florida Department of Children and Families (DCF) conducted an

investigation concerning the victim and her accusations of sexual assault against several men, including Loftin. (Doc. 8, Ex. 20, pp. 515, 518-20, 522-24.) The prosecutor's testimony also indicated that Loftin's first attorney (who did not represent him at trial and did not testify at the hearing) filed an unopposed pre-trial motion for release of the DCF records, and that motion was granted. (*Id.*)

The prosecutor testified that the State never made any attempt to obtain information regarding the psychological background or treatment of the victim. (*Id.*, p. 515.) The prosecutor testified that he remembered reading the DCF files made available but that he did not recall seeing any psychiatric or psychological records of the victim, and that he had no reason to believe he should have tried to acquire them if they existed. (*Id.*, pp. 519-20.) Loftin's trial counsel testified that she did not know of any psychological records of the victim. (*Id.*, pp. 523-24.)

Loftin testified that he had no personal knowledge whether the victim underwent psychiatric or psychological treatment, that he had never seen the DCF files, that he "just thought" the State had such records and "figured" they would be in the DCF files, and that he had no knowledge whether such records existed. (*Id.*, pp. 478-79, 508.)

Based on the witnesses' testimony, the state postconviction court found that Loftin "has not established that psychological treatment records existed or that the State failed to

disclose them." (Doc. 8, Ex. 21, p. 462.) Accordingly, the court found that Loftin "has not established [that] a *Brady* violation occurred." (*Id.*)

Loftin has not shown that the state court's denial of his claim was unreasonable. *Brady* held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87. To establish a *Brady* violation, a petitioner must show that "(1) the evidence at issue is favorable to the accused, either because it is exculpatory or because it is impeaching; (2) the evidence was suppressed by the State, either willfully or inadvertently; and (3) the defendant incurred prejudice." *Wright v. Sec'y, Fla. Dep't of Corr.*, 761 F.3d 1256, 1278 (11th Cir. 2014). Loftin has not come forward with any proof that evidence favorable to him existed in the form of psychological or psychiatric records of the victim or that this evidence was suppressed by the State. And as Loftin conceded at the evidentiary hearing, he only assumed that such evidence existed. Under these circumstances, Loftin fails to show that the state court unreasonably applied *Brady*, or that the court's decision was based on an unreasonable factual determination.

Loftin claims in his counseled supplemental reply that the postconviction court denied his claim because the prosecutor never actually requested or obtained the records, and that "the trial court's findings completely overlooked the obvious orders before it."

18

(Doc. 29, p. 4.) Loftin cites a pre-trial state court order—which has not been provided to this Court by either party—which he states allowed the disclosure of "abuse reports and records" relating to the victim for in-camera inspection. (*Id.*, pp. 4-5.) Loftin maintains that "records were known of by the prosecution and as testified to during the evidentiary hearing, were not known of by the defense. This is where the *Brady* violation took place." (*Id.*, p. 5.) However, Loftin does not explain this vague assertion or support it with citations to the evidentiary hearing demonstrating that psychiatric or psychological treatment records existed, much less that they were favorable to Loftin. Further, as addressed, defense counsel testified that she received and reviewed the DCF records. (Doc. 8, Ex. 20, pp. 523-24.) The prosecutor and trial counsel both testified that they had no knowledge of any psychological or psychiatric records related to the victim. (*Id.*, pp. 515, 520, 523-24.) And the postconviction court's ruling was based, not on a failure of the State to obtain the records, but on Loftin's failure to establish that records of the victim's psychological or psychiatric records existed and were suppressed by the State. Again, Loftin offers no evidence showing that such exculpatory evidence existed but was not provided to him. Loftin is not entitled to relief on Ground Two.

## C. Ground Three

Loftin argues that trial counsel was ineffective for failing to investigate Loftin's competency and have him evaluated for competency to proceed because "it was clear that [he] was depressed and suicidal." (Doc. 14, p. 9.)

At the state court postconviction evidentiary hearing, Loftin testified that he was suicidal and that he was also depressed and "kind of numb" while awaiting trial. (Doc. 8, Ex. 20, pp. 484-85.) Loftin stated that he did not discuss these concerns with his attorney. (*Id.*) Loftin testified that he "basically" understood what was happening at the time of trial. (*Id.*, p. 485.) Loftin further testified that while he "didn't really" assist his attorney during the trial, he met with his attorney prior to trial and reiterated that he understood what was happening during the trial. (*Id.*, pp. 508-09.)

Loftin's trial counsel testified that she did not believe Loftin was incompetent to proceed. (*Id.*, p. 527, 532-33.) She testified that Loftin was very depressed and that his presentation as suicidal caused her concern. (*Id.*) She testified that he was nonetheless able to speak with her about matters including the written confession and filing a demand for speedy trial, and that there was a "back and forth" in their discussions. (*Id.*)

The court found that "[b]ased on the testimony presented at the evidentiary hearing, Defendant has not established he was incompetent to proceed to trial, especially where Defendant conceded he 'basically' understood the trial proceedings." (Doc. 8, Ex. 21, pp.

20

462-63.) Therefore, the court concluded that Loftin failed to show either prong of *Strickland*. (*Id.*, p. 463.)[3]

Loftin does not show that the state court unreasonably denied his claim. The conviction of a mentally incompetent defendant violates due process. *Pate v. Robinson*, 383 U.S. 375 (1966). The standard for competency to proceed is whether the defendant "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding–and whether he has a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 402 (1960);[4] *see also Drope v. Missouri*, 420 U.S. 162, 171 (1975) ("[A] person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial.").

The evidentiary hearing testimony reflects that Loftin understood the trial proceedings and communicated with counsel about the case. Counsel agreed that Loftin appeared very depressed and she knew he was suicidal. But these circumstances do not

---

[3] As Respondent notes, the state postconviction court's order reads, "the Court finds that Defendant demonstrated deficient performance or prejudice." (Doc. 8, Ex. 21, p. 463.) Respondent asserts that this sentence contains a typographical error. Considering the denial of the claim and the totality of the court's findings, the Court agrees with Respondent's contention that "the court obviously meant that petitioner had failed to demonstrate deficient performance or prejudice." (Doc. 16, p. 11, n.1.) Loftin does not dispute Respondent's interpretation of the state court's order. (Doc. 20, pp. 9-14; Doc. 29, p. 5.)

[4] The *Dusky* standard is set out in Florida law. *See* § 916.12(1), Fla. Stat.; Fla. R. Crim. P. 3.211(a)(1).

establish incompetency to proceed. *See, e.g., Medina v. Singletary*, 59 F.3d 1095, 1107 (11th Cir. 1995) ("[N]ot every manifestation of mental illness demonstrates incompetence to stand trial; rather, the evidence must indicate a present inability to assist counsel or understand the charges.") (citation omitted); *Drope*, 420 U.S. at 180-81 (stating that a suicide attempt may indicate mental instability but does not necessarily signal incompetency to stand trial).

Therefore, Loftin does not show that the state court unreasonably applied *Strickland* in finding that counsel was not ineffective for declining to have Loftin evaluated for competency to proceed. Nor does he show that the state court unreasonably determined that he failed to show prejudice under *Strickland. See Futch v. Dugger*, 874 F.2d 1483, 1487 (11th Cir. 1989) ("In order to demonstrate prejudice from counsel's failure to investigate his competency, petitioner has to show that there exists 'at least a reasonable probability that a psychological evaluation would have revealed that he was incompetent to stand trial.' " (quoting *Alexander v. Dugger*, 841 F.2d 371, 375 (11th Cir. 1988))).

As Loftin has not demonstrated that the state court's decision involved an unreasonable application of *Strickland* or was based on an unreasonable factual determination, he is not entitled to relief on Ground Three.

### D. Ground Four

Loftin claims that trial counsel failed to conduct an adequate pre-trial investigation. He claims that counsel "failed to request 'family services' in a motion to compel and that the psychological and psychiatric profiles of the victim . . . could have identified a chain of these same accusations against the victim's adult boyfriends." (Doc. 14, p. 11.) It appears that Loftin contends counsel should have obtained and introduced into evidence the DCF files concerning the victim, including any records concerning her psychological or psychiatric status, and her accusations of sexual assault against other individuals.

When asked about this claim at the evidentiary hearing, Loftin contended that such information might have shown the victim fabricated the allegations "due to the type of lifestyle she was living." (Doc. 8, Ex. 20, p. 486.) Loftin testified that, to his belief, the victim had mental health issues due to drug and alcohol use and "everything else" and stated that the victim attempted to bribe him by saying that she was going to make the accusations if Loftin did not buy her some DVDs that she wanted. (*Id.*, p. 487.)

Loftin's trial counsel testified that the DCF file addressed the victim's past history, including her accusations against others. (*Id.*, pp. 523-26.) But counsel testified that she chose not to seek introduction of these records because they indicated that over the course of a months-long investigation, Loftin continued "to see" the victim. (*Id.*, p. 525.) Counsel explained that when the victim told Loftin she was going to report the offenses, Loftin threatened to kill himself and that her trial strategy was "that it was so shocking to him

23

that she would report such a thing that at that point he became suicidal and wanting to kill himself." (*Id.*) Counsel elaborated that the strategy was to argue that the victim was extorting Loftin and made a false report because he would not buy her the DVDs. (*Id.*, p. 532.) Counsel testified that she believed this was a better approach than having the jury learn "that this was an ongoing investigation over the course of several months during which time he continued to see her. So I thought that it would be better to not introduce those records." (*Id.*, p. 525.) Counsel acknowledged that at deposition, the victim changed her story "slightly" from what she told DCF but testified that she nevertheless believed any benefits from admitting the records would have been outweighed by the downside of doing so. (*Id.*, pp. 531-32.)

The state postconviction court denied this claim, finding that Loftin "has not proven that psychological reports actually existed where counsel testified she was unaware of such records and Defendant only 'thought' the State may have them." (Doc. 8, Ex. 21, p. 463.) The court also concluded that Loftin "has not shown how records of prior sexual assault accusations would have been admissible" because under *Pantoja v. State*, 59 So.3d 1092, 1098 (Fla. 2011), "[g]enerally, evidence of prior accusations is inadmissible." (*Id.*) The court found that Loftin "has not demonstrated deficient performance or prejudice for failing to introduce psychological records and records about prior sexual assault accusations." (*Id.*, pp. 463-64.) The court also found that trial counsel's testimony was

credible and found that counsel made a "feasible, strategic decision not to use the DCF records." (*Id.*, p. 466.) Therefore, the state court found that Loftin failed to show deficient performance in not introducing the records. (*Id.*, pp. 466-67.)

Loftin has not shown entitlement to relief. First, as addressed in the discussion of Loftin's *Brady* claim, there was no evidence that psychological or psychiatric records of the victim in fact existed. Second, the state court's determination that any records about prior sexual assault accusations would have been inadmissible at trial is a matter of state evidentiary law. *See Pinkney v. Secretary, DOC*, 876 F.3d 1290, 1295 (11th Cir. 2017) ("[A]lthough 'the issue of ineffective assistance—even when based on the failure of counsel to raise a state law claim—is one of constitutional dimension,' [a federal court] 'must defer to the state's construction of its own law' when the validity of the claim that . . . counsel failed to raise turns on state law." (quoting *Alvord v. Wainwright*, 725 F.2d 1282, 1291 (11th Cir. 1984))); *Callahan v. Campbell*, 427 F.3d 897, 932 (11th Cir. 2005) ("[T]he Alabama Court of Criminal Appeals has already answered the question of what would have happened had [petitioner's counsel] objected to the introduction of [petitioner's] statements based on [state law] – the objection would have been overruled. . . . Therefore, [petitioner's counsel] was not ineffective for failing to make that objection.").[5]

---

[5] In his pro se reply, Loftin cites a Florida Supreme Court case for the proposition that application of § 790.022, Fla. Stat., the "rape shield law" that generally prohibits evidence of specific instances of a victim's prior consensual sexual activity with a person other than the defendant, must yield to a criminal defendant's

Nor does Loftin show that the state court unreasonably determined that counsel did not perform deficiently by making a strategic decision not to introduce the DCF records because they reflected that Loftin continued to see the victim for months while the investigation was underway. The state court's finding that counsel's decision was strategic is a finding of fact that is presumed correct unless the presumption is rebutted by clear and convincing evidence. *See Franks v. GDCP Warden*, 975 F.3d 1165, 1176 (11th Cir. 2020) ("The question of whether an attorney's actions were actually the product of a tactical or strategic decision is an issue of fact, and a state court's decision concerning that issue is presumptively correct." (quoting *Provenzano v. Singletary*, 148 F.3d 1327, 1330 (11th Cir. 1998))); *DeBruce v. Comm'r, Ala. Dep't of Corr.*, 758 F.3d 1263, 1273 (11th Cir. 2014) (stating that a question "regarding whether an attorney's decision is 'strategic' or 'tactical' is a question of fact."). Loftin does not present clear and convincing evidence to rebut the presumption that the state court's factual finding was correct. *See* 28 U.S.C. § 2254(e)(1).

Finally, Loftin does not show that counsel's strategic decision was so unreasonable as to warrant relief under *Strickland. See Dingle v. Sec'y, Dep't of Corr.*, 480 F.3d 1092, 1099 (11th Cir. 2007) (stating that counsel's strategic decision "will be held to have been

---

right to confrontation. *See Lewis v. State*, 591 So.2d 922 (Fla. 1991). *Lewis* is distinguishable from *Pantoja*, which concerns the introduction for impeachment purposes of a victim's prior accusation that did not result in a conviction. *Pantoja*, 59 So.3d 1092. Moreover, Loftin cannot establish entitlement to relief under the AEDPA, as he does not cite any clearly established federal law to support his contention that counsel was deficient in not seeking to introduce the records of the victim's prior accusations.

ineffective assistance only if it was so patently unreasonable that no competent attorney would have chosen it" even when the decision "appears to have been unwise in retrospect") (quotation omitted); *see also Franks*, 975 F.3d at 1176 ("Because *Strickland* allows for a range of strategic choices by trial counsel, so too is there considerable leeway for state courts to determine the reasonableness of those choices. . . . For Franks to prevail, then, he would have to show that *no* reasonable jurist could find that his counsel's performance fell within the wide range of reasonable professional conduct.") (emphasis in original); *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000) ("[B]ecause counsel's conduct is presumed reasonable, for a petitioner to show that the conduct was unreasonable, a petitioner must establish that no competent counsel would have taken the action that his counsel did take."). Loftin fails to demonstrate that the state court unreasonably applied *Strickland* or unreasonably determined the facts in denying his claim.

In his pro se reply, Loftin makes a new argument that one sentence was deleted from his written statement without his consent "before the statement was submitted to the jury." (Doc. 20, p. 20.) Loftin also argues for the first time in his pro se reply that he was incompetent to waive counsel at the time of police questioning. (*Id.*, pp. 20-21.) Loftin may not bring new claims in the reply. *See Herring v. Sec'y, Dep't of Corr.*, 397 F.3d 1338, 1342 (11th Cir. 2005) ("[A]rguments raised for the first time in a reply brief are not properly before a reviewing court.") (citations omitted). In addition, Loftin's claim about

an alteration to the statement is not cognizable under § 2254 because it does not clearly allege a federal constitutional violation. *See Branan*, 861 F.2d at 1508. Finally, even if this claim could be liberally construed as federal in nature and even if both new claims in the reply were properly before the Court, they would be unexhausted because Loftin did not present them to the state courts either on direct appeal or in postconviction proceedings. (Doc. 8, Exs. 8, 11, 12, 14, 15 & 22.) Accordingly, Loftin is not entitled to relief on Ground Four.

### E. Ground Five

Loftin argues that trial counsel was ineffective for failing to object when the State introduced a written confession "on a facially invalid form in violation of Fla. Rule of Criminal Procedure 3.111(d)(4) where [his] waiver of counsel was not witnessed by two persons" and the form was outdated, improperly completed, and contained altered page numbers. (Doc. 14, p. 13.)

Florida Rule of Criminal Procedure 3.111 is titled "Providing Counsel to Indigents." It addresses providing counsel "to indigent persons in all prosecutions for offenses punishable by incarceration including appeals from the conviction thereof." Fla. R. Crim. P. 3.111(b)(1). Rule 3.111(d) is titled "Waiver of Counsel." The subsection upon which Loftin relies reads, "[a] waiver of counsel made in court shall be of record; a waiver

made out of court shall be in writing with not less than 2 attesting witnesses. The witnesses shall attest the voluntary execution thereof." Fla. R. Crim. P. 3.111(d)(4).

At the evidentiary hearing, the prosecutor testified to his understanding that Rule 3.111 applies to the appointment of an attorney for an indigent person only after the person has been arrested and has been charged by the State—not to police procedures. (Doc. 8, Ex. 20, p. 516.) Loftin's trial counsel similarly testified that she understood the attorney waiver provision of Rule 3.111 to apply to self-representation. (*Id.*, p. 528.)

In denying Loftin's claim, the state court noted the evidentiary hearing testimony of the prosecutor and trial counsel. (Doc. 8, Ex. 21, p. 464.) The court found the attorneys' "assertions to be accurate as rule 3.111(d)(4) in [sic] inapplicable to police questioning." (*Id.*) The court concluded that counsel could not "have moved to suppress or objected to the introduction of Defendant's written statements based on a violation of rule 3.111(d)(4)." (*Id.*, pp. 464-65.) The court found that Loftin failed to establish either deficient performance of counsel or resulting prejudice. (*Id.*, p. 465.)

Loftin fails to show entitlement to relief. Whether an objection to the written statement under the Florida Rules of Criminal Procedure would have succeeded is a question of state law. This Court must defer to the state court's determination that an

objection would have failed. *See Pinkney*, 876 F.3d at 1295; *Callahan*, 427 F.3d at 932.[6] Loftin has not shown that the state court's decision involved an unreasonable application of *Strickland* or was based on an unreasonable factual determination. He is not entitled to relief on Ground Five.

### F. Ground Six

Loftin contends that trial counsel was ineffective for failing to present a psychological evaluation about his competency, or "other mitigating factors" to argue for a lesser sentence. (Doc. 14, p. 13.)

At the evidentiary hearing, Loftin claimed that a competency evaluation would have led the court to impose a lesser sentence. (Doc. 8, Ex. 20, p. 485.) But he also conceded that counsel had him evaluated by a doctor, Dr. Carpenter, for sentencing mitigation purposes. (*Id.*, p. 510.)[7] Trial counsel testified that she had Loftin evaluated by Dr. Carpenter for mental health issues for purposes of sentencing. She recalled arguing for a lesser sentence on the bases of his prior work history, family history, military service, lack

---

[6] In his pro se reply, Loftin cites a 1995 state court decision that applied Rule 3.111(d)(4) to a waiver signed during a police interrogation. *Johnson v. State*, 660 So.2d 637, 643 (Fla. 1995). A Committee Note to a 2000 amendment to Rule 3.111, however, states that "[t]his rule applies only to judicial proceedings and is inapplicable to investigative proceedings and matters." Under Florida law, "Committee Notes are treated the same as sentencing guidelines which are, of course, part of the Florida Rules of Criminal Procedure." *Slappy v. State*, 516 So.2d 342, 344 (Fla. 1st DCA 1987).

[7] A Florida trial court may impose a sentence less than the lowest permissible sentence as calculated under the criminal punishment code scoresheet if there are "circumstances or factors that reasonably justify the downward departure." § 921.0026(1), Fla. Stat.

of prior record, and Dr. Carpenter's finding that he was at low risk to re-offend. (*Id.*, p. 530.)

The state court found that "the record shows that counsel did attempt to mitigate a lesser sentence, at least in part by utilizing Dr. Carpenter." (Doc. 8, Ex. 21, p. 465.) The court reiterated its finding that Loftin failed to establish that he was incompetent to proceed to trial. (*Id.*) Accordingly, the court determined that Loftin failed to show that counsel performed deficiently. (*Id.*)

Loftin does not establish that the state court unreasonably denied his claim. Counsel arranged an evaluation of Loftin's mental health for sentencing mitigation, as Loftin acknowledged. A review of the sentencing hearing transcript confirms that as counsel testified, she raised numerous arguments in support of a below-guidelines sentence, including Dr. Carpenter's finding that Loftin was at low risk of re-offending. (Doc. 8, Ex. 6, pp. 192-93.) And as the state court found, Loftin fails to show that he was incompetent to proceed. Accordingly, Loftin fails to show that counsel performed deficiently in not seeking a competency evaluation for sentencing purposes. Because Loftin has not established that the state court unreasonably applied *Strickland* or unreasonably determined the facts in denying his claim, he is not entitled to relief on Ground Six.

## G. Ground Seven

Loftin argues that his convictions were obtained in violation of his federal due process rights. He claims that "he was convicted as a result of a violation of discovery Rule 3.220 Florida Rules of Criminal Procedure" because the DCF files were not admitted into evidence or provided to him personally. (Doc. 14, p. 14.) He asserts that files from the DCF "were ordered to be released for admittance into evidence." (*Id.*) Loftin contends, however, that the files and "depositions about the files and expert testimony denoting physical injury as an element of the crime were unknown by defendant during any trial stage of the proceedings and were not made available to him." (*Id.*)

As an initial matter, to the extent Loftin argues that his conviction violates due process based on state laws and rules governing discovery, his claim is not cognizable under § 2254 because it raises no federal constitutional challenge to the validity of his convictions. *See Branan*, 861 F.2d at 1508.

Respondent contends that any federal claim is barred from review because Loftin failed to exhaust this claim on collateral appeal. Loftin did not raise this claim in his collateral appellate brief. (Doc. 8, Ex. 22.) Therefore, Loftin did not exhaust the claim. *See Boerckel*, 526 U.S. at 845 ("[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."); *Leonard v. Wainwright*, 601 F.2d 807, 808 (5th

Cir. 1979)[8] ("In Florida, exhaustion usually requires not only the filing of a Rule 3.850 motion, but an appeal from its denial."). To obtain appellate review, Loftin was required to brief the denial of this claim on appeal. *See* Fla. R. App. P. 9.141(b)(3)(C) (stating that briefing is required when a postconviction motion is resolved after an evidentiary hearing).

Loftin cannot return to state court to raise the claim in an untimely, successive appeal. *See* Fla. R. Crim. P. 3.850(k) (stating that a notice of appeal from the denial of a postconviction motion must be filed within 30 days of rendition of the denial order). Accordingly, the claim is procedurally defaulted. *See Smith*, 256 F.3d at 1138. Loftin does not show that either the cause and prejudice or the fundamental miscarriage of justice exception applies to excuse the default. *See id.* Accordingly, Ground Seven is barred from federal habeas review.

## V. <u>CERTIFICATE OF APPEALABILITY</u>

A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Instead, a district court or court of appeals must first issue a certificate of appealability (COA). *Id.* "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To obtain a COA, Loftin must show that

---

[8] Unless later superseded by Eleventh Circuit precedent, a Fifth Circuit decision issued before October 1, 1981, binds this Court. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

reasonable jurists would find debatable both the merits of the underlying claims and the procedural issues he seeks to raise. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Loftin has not made the requisite showing. Finally, because Loftin is not entitled to a COA, he is not entitled to appeal in forma pauperis.

It is therefore **ORDERED** that Loftin's amended Petition for Writ of Habeas Corpus (Doc. 14) is **DENIED**. The **CLERK** is directed to enter judgment against Loftin and in Respondent's favor and to **CLOSE** this case.

**ORDERED** in Tampa, Florida, on January 24, 2022.

Kathryn Kimball Mizelle
United States District Judge